EMILY PAGE *v.* THOMAS H. CRAWFORD ET AL.

Pleading—Answer, When not Required to be Denied under Oath—Written Instruments Filed. .

Where in an answer a receipt is referred to as having been duly signed by the plaintiff, it must be filed with the pleadings in order to require the plaintiff to a denial of same under oath. The averment in the answer that it was executed, is not sufficient.

Mortgages—Fraudulent Transfer.

Facts as to dismissal of a suit to foreclose a mortgage, and a receipt given in full liquidation by acceptance of rent notes by mortgagor, held sufficient to declare fraudulent a subsequent assignment of said mortgage, and denial of genuineness of the receipt.

APPEAL FROM LOUISVILLE CHANCERY COURT.

October 13, 1868.

OPINION OF THE COURT BY JUDGE WILLIAMS:

The first prominent question to be decided is whether the averments of Bensinger's amended answer are sufficient to require of Mrs. Page a denial upon oath of the paper presented by him, purporting to be her and her husband's receipt for the rents of 1863, which averments are as follows:

"He says that he settled and accounted to S. K. Page and Emily Page for the rents so collected by him as will appear *by the receipt* endorsed on Rehan's lease that he fully accounted for the said rents and *that S. K. Page signed and receipted with his own and Emily Page's*. *name.*"

There is no avermen*t that the husband was her authorized agent,* nor that *the receipt was her act and deed;* indeed, this seems to have been studiously avoided, for it even designates it as *"the receipt"* instead of *"their receipt."*

Section 588 Civil Code provides that

"where a writing purporting to have been executed by one of the parties, is referred to in, and filed with, a pleading, it may be read as genuine against such party, unless he denies its genuineness by affidavit before the trial."

Instead of filing this receipt as a writing executed by Emily Page, the defendant stated facts which made it necessary for him to prove it was her act, and without this it should not have been read; therefore, she was not called on to controvert it by affidavit, and the chancellor erred in supposing all inquiry as to its genuineness was cut off by reason of there being no affidavit controverting it. And we think the evidence, facts and circumstances developed in this case negative its genuineness, at least do not establish it.

We are also satisfied from the evidence, facts and circumstances that the paper purporting to be signed by "B. Marks Co.," dated Louisville, March 14, 1863, filed by Mrs. Page in her suit, is genuine. This paper reciting that they had

"bought and got transferred to us three notes of Samuel K. and Emily Page, dated June, 1862, at 6, 12 and 18 months after date secured by mortgage all amounting to $816; said Page and wife have paid and satisfied us for said notes to S. Maas by receipting to us the rent under our lease to Page for the year 1863, for the house occupied on Third street and receipting to us for the rent of the warehouse on Third occupied by Hanna (should be Hasig) & Ogles for 1863, and *transferring* to us Rehan's lease for the house he occupies on Third street for the year 1863,"

is fortified by the collecting the rents by N. Besinger, one of the firm of B. Marks & Co., by the non-accounting for the payment of the rent of the house then occupied by B. Marks & Co. and by the position of the names of S. K. Page and Emily Page on the back of said Rehan's lease, the color of the ink in which these names appear being of different kind and much older than the receipt written above these names, and the pregnant fact that it was not set up in the original answer, and which is the paper relied on by defendant Besinger, and fortified as these suspicions are by the parol evidence.

It is almost morally certain that these notes were liquidated as stated in the paper signed *"B. Marks Co."*

Maas had brought suit to foreclose the mortgage on the first note; he proves that when B. Marks & Co. bought these notes he gave an order to his attorney to dismiss the suit, which was done; Marks & Co. would not have had this suit dismissed unless some satisfactory arrangement, by Page, had been made with them, and their said writing being on the back of the writ in Maas' suit is

also significant that this arrangement between them and Page was owing to said suit.

Nor is the fact that the notes were then not taken up very significant, for the rents were not due, but had to run some time and be collected monthly.

S. K. Page was considerably advanced in life and may be presumed to be somewhat forgetful of recent transactions and events; besides, he died but a few months after said notes would be liquidated by the rents.

The transferring of said notes to Gay after S. K. Page's death, who in some manner was connected in business with the firm of Marks & Co., but how does not distinctly appear, the bringing suit and foreclosing said mortgage, and selling a portion of the land when Mrs. Page knew nothing of said transaction, nothing of said paper signed "B. Marks Co.," and which was not discovered until months afterwards, and then by accident, must be regarded as fraudulent.

The judgment, foreclosure and sale all being wrongfully and fraudulently obtained, and as the purchaser, Keller, who is acting for Mrs. Page, having no objections to the setting the sale aside, the whole should be declared null and void.

B. Marks & Co. and their assignee Gay should be perpetually enjoined from asserting said judgment or any rights under it, and Keller should release to Mrs. Page any right of title he may have acquired, and B. Marks & Co. and Gay should be compelled to restore to Keller any money he may have paid on said sale and purchase.

The chancellor's judgment dismissing Mrs. Page's suit was erroneous, and it is reversed, with directions for further proceedings as herein indicated.

*Harrison & Bennett, for appellant.*

*Stirman, for appellees.*